UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ST. PAUL FIRE AND MARINE**           Case No.
**INSURANCE COMPANY,**

        **Plaintiff,**

v.

**CHARLES MANSFIELD and**
**CARRABELLE DIVE CHARTERS,**
**INC.,**

        **Defendants.**
_____/

## COMPLAINT

Plaintiff, St. Paul Fire and Marine Insurance Company ("St. Paul"), by its attorneys, Duane Morris LLP, as and for its Complaint against defendants Charles Mansfield ("Mansfield") and Carrabelle Dive Charters, Inc. (collectively "the Insured") alleges on information and belief as follows:

## JURISDICTION AND VENUE

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and within the admiralty jurisdiction of this Court pursuant to 28 U.S.C. § 1333.

2. The Court's jurisdiction also is based on 28 U.S.C. § 1332. The citizenship of the parties is diverse and the amount in controversy exceeds $75,000 exclusive of interest and costs.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## PARTIES

4. Plaintiff St. Paul is a corporation organized and existing pursuant to the laws of Minnesota with its principal place of business at 125 Maiden Lane, New York, New York 10005.

5. Upon information and belief, defendant Mansfield is an individual residing in, and a citizen of, the State of Florida.

6. Upon information and belief, defendant Carrabelle is a corporation organized and existing pursuant to the laws of Florida with its principal place of business at P.O. Box 1344, Carrabelle, Florida 32322.

## FACTS

**A.**     **The St. Paul Policy**

7. St. Paul issued Inspected Vessel Charter Policy of Insurance No. SY00001526 effective from August 3, 2005 to August 3, 2006, covering the Insured's vessel M/V TERMINATOR (the "Policy"). A copy of the Policy is attached hereto as Exhibit "A."

8. As per the Declaration page, the Policy provides a limit of $120,000 in coverage for physical damage to the Vessel.

9. Part A of the Policy provides in relevant part:

> **PROPERTY DAMAGE COVERAGE**
>
> **PERILS INSURED AGAINST**: We will provide coverage for accidental, direct physical loss or damage to your insured vessel as well as salvage charges, except as so specifically excluded in this policy.
>
> **EXCLUSIONS:** We will not pay you for loss, damage or expense under part A: Property Damage Coverage caused

        by or resulting from:

        a.    Wear and tear, gradual deterioration, weathering, inherent vice, dry rot, oxidation, electrolysis, corrosion, lack of adequate maintenance;

        \*   \*   \*

        e.    Manufacturer's defects or defects in design or construction of the insured vessel or any component thereof;

        \*   \*   \*

        g.    Intentional or illegal acts of an insured person which cause loss or expense.

      10.    The Policy also contains the following "General Conditions and Exclusions":

        \*   \*   \*

        **USE OF VESSEL**: We provide coverage while the insured vessel is used in a Commercial Venture, as defined in this policy. We do not provide coverage for any other commercial purpose. We also provide coverage when the insured vessel is used by the named insured for private pleasure purposes. It is further warranted that, if applicable, the insured vessel maintain a current certificate of inspection from the United States Coast Guard. We will provide coverage when you are attempting to aid other vessels in distress, provided there is no consideration for your services.

        **CAPTAIN WARRANTY**: Warranted that while the insured vessel(s) is used for commercial purposes such as described under Use of Vessel, a captain duly licensed in accordance with United States law and the law of the Port from which the Vessel operates shall be aboard and in charge of the vessel at all times.

        \*   \*   \*

        **SEAWORTHINESS WARRANTY**: Warranted that, at

the inception of coverage and throughout the policy term, the vessel shall be in seaworthy condition, the insured shall exercise due diligence to keep the vessel seaworthy, and in all respects fit, tight, and properly manned, equipped and supplied.

\* \* \*

**CONCEALMENT, MISREPRESENTATION OR FRAUD**: All coverage provided by us will be voided from the beginning of the Policy period if you intentionally conceal or misrepresent any material fact or circumstance relating to this contract of insurance, or the application for such insurance, whether before or after a loss.

\* \* \*

**DISHONEST, ILLEGAL OR INTENTIONAL ACTS**: We do not pay for loss or damage caused by the dishonest, illegal or intentional acts of any covered person, or any person to whom your insured property is entrusted, regardless of whether or not such person is convicted of such an act by a criminal court.

11. The Policy contains the following definitions:

### DEFINITIONS

**"Who Is Insured by This Policy"**

a. "Named Insured" - with regard to a commercial venture, means the Named Insured as indicated on the declaration page. "Named Insured" with regard to private pleasure use means the named insured as indicated on the declaration page and any family member within your household and any other person using the insured craft with your permission.

\* \* \*

**Commercial Venture** means any time the insured vessel is used to carry passengers who have agreed to pay to be on the vessel. It also includes any time the insured vessel is being operated by a captain or crewmember to prepare for such a trip.

> **Private Pleasure Use** means any time the insured vessel is used by the named insured for non-commercial purposes.

12. The Policy also contains an "Incidental Commercial Fishing Endorsement" which provides in relevant part:

> It is understood and agreed that the COMMERCIAL VENTURE clause under the DEFINITIONS of the policy is changed to include "incidental commercial fishing" as a type of commercial purpose covered under this policy.

**B.  The Agreement Between the Insured and Bailey**

13. According to the Insured, Captain Clay Bailey ("Bailey") was employed by the Insured since 2003 on a part-time basis to captain certain fishing charters on the Vessel.

14. According to the Insured, starting in early 2005, the Insured and Bailey had a verbal agreement that when there were no fishing charters or passengers for hire, Bailey could use the Vessel for commercial fishing (the "Agreement").

15. According to the Insured, under the Agreement, the Insured was to supply the Vessel in running order with all equipment and Bailey would take the Vessel out into the Gulf of Mexico for two to three days at a time.

16. According to the Insured, under the Agreement, Bailey would assume the costs of fuel, food, ice, bait, crew and other incidentals and would split the proceeds of the catch with the Insured.

**C.  The Loss**

17. On August 3, 2005, Bailey broke ground from Apalachicola, Florida in the Vessel to fish.

18. Bailey was the sole crewmember on the Vessel.

19. The Insured reported that, on the evening of August 6, 2005, while preparing to return to port, Bailey heard a loud noise from the engine space.

20. The Insured reported that Bailey investigated the noise and found that the flexible exhaust hose aft of the fixed riser had blown, leaving a visible hole in the hose.

21. The Insured reported that Bailey determined that the fresh water reservoir had been compromised; that water appeared to be leaking from the underside of the reservoir; and that the bilge pump was inoperative.

22. The Insured reported that Bailey did not make any repairs to the exhaust hose because the Vessel did not have the appropriate equipment and tools.

23. At 9:00 p.m., Bailey went below deck to sleep because he was exhausted.

24. Bailey could not drop anchor because the Vessel was without power, so the Vessel was allowed to drift.

25. Because Bailey was the sole crewmember, no watch was kept while he slept.

26. The Insured reported that, at approximately 4:00 am on August 7, 2005, Bailey awoke from his sleep.

27. The Insured reported that Bailey determined that the Vessel was sinking and he abandoned ship.

28. The Vessel sank and has not been located.

29. The Insured has made a claim under the Policy for the coverage limit of $120,000.

30. St. Paul has declined the Insured's claim under the Policy.

31. St. Paul has also reserved its right to deny coverage under the Policy based upon whether subsequent investigation reveals the following:

    a. whether the Insured breached the Captain Warranty in the Policy;

    b. whether the Insured breached the Navigational Limit Warranty in the Policy;

    c. whether the commercial fishing engaged in at the time of the claimed loss was not "incidental";

    d. whether the failure of the engine hoses and bilge pumps was due to wear and tear, gradual deterioration, lack of adequate maintenance, manufacturer's defects and design defects, all of which are excluded causes under the Policy; and

    e. whether the Insured intentionally misrepresented or concealed any material fact in obtaining the Policy.

## COUNT ONE
### (Breach of Policy Warranties)

32. St. Paul repeats and realleges each and every allegation contained in paragraphs 1 through 31, inclusive, of this Complaint as if fully set forth at length herein.

33. The Policy contains several express warranties, the violation of any renders coverage unavailable.

34. The Insured warrants that it will maintain a current Coast Guard Certificate of Inspection ("COI") for the Vessel.

35. At all relevant times, the Vessel supposedly was operating under and pursuant to a COI.

36. The COI for the Vessel requires, among other things, that the Vessel be manned at all times by a master and one deckhand.

37. The COI also requires an alternate crew to be provided for a trip of more than 12 hours in any 24 hour period.

38. The Vessel was operated in violation of the COI as it was operated solely by Captain Bailey at the time of the loss.

39. The Vessel was operated in violation of the COI as it was at sea for longer than 12 hours in a 24 hour period with no alternate crew.

40. The Seaworthiness Warranty in the Policy requires that the Insured exercise due diligence to keep the Vessel at all times in a seaworthy condition and in all respects fit, tight and properly manned, equipped and supplied.

41. The Insured breached the Seaworthiness Warranty in the Policy by, among other things:

    a. allowing the Vessel to be operated without a full complement of crew;

    b. failing to exercise due diligence to provide a competent master and crew (i) in number and (ii) in experience;

    c. failing to exercise due diligence to provide working pumps and to supply the necessary repair tools, materials and spares to allow repairs to be handled properly; and

    d. failing to maintain and keep the Vessel in seaworthy condition.

42. By virtue of the Insured's breach of each of the various Warranties in the Policy, there is no coverage under the Policy for the loss of the Insured's Vessel.

43. St. Paul brings this action for a declaratory judgment pursuant to 28 U.S.C. §2201 et seq. and Rule 57 of the Federal Rules of Civil Procedure.

Case 054-cv-01950-428LSPGMAAK Document 1742 Filed 10/24/2505 Page 8 of 10

44. St. Paul prays this Court to declare that the Insured's claims are not covered by the Policy.

**COUNT TWO**
**(Breach of Warranty of Seaworthiness)**

45. St. Paul repeats and realleges each and every allegation contained in paragraphs 1 through 31, inclusive, of this Complaint as if fully set forth at length herein.

46. Every shipowner has a non-delegable duty to, among other things, provide a competent master and crew, and the failure to provide a competent master and crew renders a vessel unseaworthy.

47. Every shipowner has a non-delegable duty to, among other things, ensure that the ship is reasonably fit and equipped to encounter the perils which it is likely to encounter, and the failure to undertake such measures renders a vessel unseaworthy.

48. The Insured breached the Warranty of Seaworthiness by among other things:

    a. allowing the Vessel to be operated without a full complement of crew;

    b. failing to exercise due diligence to provide a competent master and crew (i) in number and (ii) in experience;

    c. failing to exercise due diligence to provide working pumps and to supply the necessary repair tools, materials and spares to allow repairs to be handled properly; and

    d. failing to maintain and keep the Vessel in seaworthy condition.

49. Each such breach of the Warranty of Seaworthiness rendered the Vessel unseaworthy.

50. There is no coverage under the Policy for the Insured's claims by reason of the Insured's breaches of the Warranty of Seaworthiness which rendered the Vessel unseaworthy,

51. St. Paul brings this action for a declaratory judgment pursuant to 28 U.S.C. §2201 et seq. and Rule 57 of the Federal Rules of Civil Procedure.

52. St. Paul prays this Court to declare that the Insured's claims are not covered by the Policy.

WHEREFORE, plaintiff St. Paul Fire and Marine Insurance Company demands judgment of this Court against defendants Charles Mansfield and Carrabelle Dive Charters, Inc. for:

(a) a declaration that the Insured's claims are not covered by the Policy and that St. Paul has no obligation to the Insured under the Policy for the loss of the Insured's Vessel; and

(b) for all such other and further relief that this Court may deem just and proper, together with the costs, disbursements and reasonable fees of this action.

| Of Counsel for Plaintiff St. Paul Fire And Marine Insurance Company: | By: /s James A. Weinkle |
|---|---|
| | James A. Weinkle |
| | Florida Bar No. 710891 |
| James W. Carbin, Esq. | Attorneys for Plaintiff St. Paul Fire And |
| Brett M. Popolow, Esq. | Marine Insurance Company |
| DUANE MORRIS LLP | DUANE MORRIS LLP |
| A Delaware Limited Liability Partnership | Wachovia Financial Center |
| 744 Broad Street, Suite 1200 | 200 South Biscayne Blvd., Suite 3400 |
| Newark, New Jersey 07102-3889 | Miami, Florida 33131 |
| Telephone: 973.424.2000 | Telephone: 305.960.2200 |
| Facsimile: 973.424.2001 | Facsimile: 305.960.2201 |
| JWCarbin@duanemorris.com | JAWeinkle@duanemorris.com |
| BMPopolow@duanemorris.com | TRIAL COUNSEL |